LEWIS SPEAKMAN, ET AL., PLAINTIFFS-RESPONDENTS, v. MAYOR AND COUNCIL OF THE BOROUGH OF NORTH PLAINFIELD, AND LOUIS A. J. FISCHER, INDIVIDUALLY, AND FRANK H. BLATZ, EXECUTOR AND TRUSTEE, ETC., DEFENDANTS-APPELLANTS.

Argued October 22, 1951—Decided December 3, 1951.

*Mr. Warren J. Lynch* argued the cause for the appellants (*Mr. Karnick Odjakjian*, attorney for the defendant Mayor and Council of the Borough of North Plainfield).

*Mr. Huyler E. Romond* argued the cause for the respondents (*Messrs. Toolan, Haney & Romond*, attorneys).

The opinion of the court was delivered by

ACKERSON, J.   This appeal is from a judgment of the Superior Court, Law Division, setting aside, as illegal and void, an amendment to the zoning ordinance of the Borough of North Plainfield.

The borough adopted its first zoning ordinance in 1923. Prior thereto a non-ferrous foundry for the manufacture of bronze and aluminum castings had been operated in a building, 36' x 200', located on an irregular shaped lot, approximately 200' x 500', at the intersection of Clinton Avenue and Carter Place in said borough. When the ordinance became effective this property was far inside the boundaries of a large "A" residence zone and the foundry thereon, by reason of its prior operation, became a permissible non-conforming use and was so continued. The defendant, Fischer Casting Company (a partnership sometimes hereinafter referred to as the "company"), acquired the property in 1933 and has continued to operate the foundry for the aforesaid purposes. In 1948 a revision of the ordinance was adopted but the company's property continued to be in the "A" residence zone.

In 1942 the defendant company proceeded to expand its plant facilities (presumably because of war contracts) without obtaining the necessary building permits. Thereafter, on the company's petition of appeal, the board of adjustment of the borough, after a public hearing, adopted a resolution recommending to the mayor and council that the company be granted permission to enlarge its plant, provided the com-

pany execute a contract with the borough agreeing to remove all of the company's buildings within a time to be limited by such contract. On February 5, 1943, the mayor and council, by resolution, accepted and confirmed the recommendation and at the same time entered into a contract with the company which provided that the latter could complete certain buildings then in the course of alteration and construction upon condition that the company would dismantle and remove its entire plant within one year after the termination of hostilities and post a bond of $6,000 as security for the performance of the contract. At the conclusion of the war this contract was extended to expire in September, 1946, and again extended to expire in September, 1949.

However, before the latter date, the company filed a petition of appeal with the local board of adjustment seeking permission to continue indefinitely the use of all of its existing buildings. This petition was denied and thereupon the company filed a complant in the Superior Court, Law Division, for a review of such denial. This action terminated in a decision on December 20, 1949, adjudging the aforesaid contract between the company and the borough and the extensions thereof illegal as *ultra vires* the municipal corporation and of no binding force. In the course of the opinion the court stated that:

"Just as obviously, however, such part of the extension of the premises which was not a legal conforming use from its inception must be returned to its original status. There would be no legal sanction for the Board of Adjustment of the Borough to entertain jurisdiction to grant a variance with reference to the extended illegal non-conforming use."

Referring thereto in their brief in the present case, the defendants say: "The effect of this decision was that even though the enlargement of the plant was illegal and subject to removal, that the company could not be required to abide by the stringent provisions of the contract which called for removal of the entire plant."

Thereafter, on March 16, 1950, the mayor and council of the borough adopted the amendatory ordinance, here under review, which created out of the "A" residence zone in which the above-mentioned foundry property of the Fischer Casting Company was located, a new zone, designated as a "modified commercial zone," comprising only that specific property—describing it precisely by courses and distances in the body of the amendment. The pertinent provisions of the amendatory ordinance are as follows:

"2. Modified Commercial Zone. In a Modified Commercial Zone, no building or premises may be used except for any of the following specified purposes:

(a) Any use permitted in 'A' and 'B' Residence Zones.

(b) There shall also be permitted foundry practices and metal casting of non-ferrous metals to such extent, and with such buildings and their appurtenances, as such practices, and casting exist and are carried on at the time of the adoption of this ordinance.

No extension of, addition to, or increase in such buildings and their appurtenances, as now exist and are carried on for such uses, shall be permitted under the preceding paragraph.

(c) No other uses shall be permitted in said zone, anything in the within ordinance or the ordinance to which this ordinance is an amendment to the contrary notwithstanding."

In April, 1950, the plaintiffs, who it is conceded are the owners of homes within the "A" residence zone out of which the "modified commercial zone" was created and located from 300 to 1,600 feet from the company's foundry, instituted this action in lieu of prerogative writ (*Rule* 3:81–1 *et seq.*) challenging the validity of the amendatory ordinance and seeking to have it set aside.

The gravamen of the complaint is that the amendatory ordinance constitutes "spot" zoning and a perversion of the statutory zoning powers delegated to the municipality by *R. S.* 40:55–30 *et seq.*, as amended by *L.* 1948, *c.* 305. It is specifically alleged that the amendment is not part of a comprehensive plan calculated to achieve the statutory objectives of zoning but an unwarranted discrimination in favor of the Fischer Casting Company. The mayor and council of the borough, as well as Louis A. J. Fischer, Christian G.

Fischer and Gloria M. Collora, trading as Fischer Casting Company, were brought in as defendants and have answered the complaint.

The trial court set aside the amendment upon a finding that the benefit conferred thereby accrued only to the defendant company and had "no remote relationship to the public health, welfare or morals." In concluding its determination, the trial court observed that in adopting the amendment the municipality ignored the holding of the court in the antecedent suit "where the extended use unaccompanied by any proper official permission was interdicted  *  *  *." Judgment was accordingly entered in the case *sub judice* in favor of the plaintiffs and defendants' appeal, while pending in the Appellate Division, was certified here on our own motion.

The fundamental question presented is whether or not the adoption of the amendatory ordinance of 1950 was a reasonable exercise of the municipal legislative powers in conformity with the requirements of the Zoning Act. Defendants, relying upon the presumption that a zoning ordinance is reasonable in its application, insist that plaintiffs have not borne the burden of overcoming that presumption.

█ The local exercise of zoning power is not absolute and unlimited but is conditioned upon its adherence to the statutory purposes and considerations to be served by zoning. *R. S.* 40:55–32 requires that zoning regulations be "in accordance with a comprehensive plan" designed to promote specified statutory purposes relating generally to the health, safety and welfare of the community, and "be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout" the municipality.

█ The specific requirement of a "comprehensive plan" is intended to avoid an arbitrary, unreasonable, or capricious exercise of the zoning power. "It is fundamental in zoning

under the police power that lands in like situation are to be classified alike. Arbitrary discrimination is inadmissible. The action must be grounded in reason and judgment based upon the policy of the statute. It must be in accordance with law· or it is capricious." *Appley v. Bernards Twp.*, 128 *N. J. L.* 195, 199 (*Sup. Ct.* 1942), affirmed 129 *N. J. L.* 73 (*E. & A.* 1942). "It is a fundamental theory of the zoning scheme that it shall be for the general good, to secure reasonable neighborhood uniformity, and to exclude structures and occupations which clash therewith." *Guaranty Construction Co. v. Bloomfield*, 11 *N. J. Misc.* 613, 615 (*Sup. Ct.* 1933).

The amendatory ordinance now under review does not satisfy the foregoing requirements. Obviously, by the plain import of its terms, it was intended for and limited to the purpose of enabling the defendant company to continue indefinitely the operation of the foundry in its present enlarged state as a legally *conforming* use. This is attempted to be done simply by reclassifying the relatively small plot of ground on which it stands as a "modified commercial zone" taken from the heart of a large residential district in which there has been no change of land use to warrant such a reclassification.

In so doing the governing body of the borough was attempting by the amendatory ordinance to grant, in effect, a special exception or variance· from the restrictive residential regulation, thereby circumventing the board of adjustment to which is committed by our Zoning Act (*R. S.* 40 :55–39, as amended by *L.* 1948, *c.* 305, § 6, *p.* 1223, and *L.* 1949, *c.* 242, § 1, *p.* 779) the *quasi*-judicial duty of passing upon such matters, at least initially, in ·accordance with prescribed standards. *Lynch v. Hillsdale*, 136 *N. J. L.* 129 (*Sup. Ct.* 1947); *Cassinari v. City of Union City*, 1 *N. J. Super.* 219 (*App. Div.* 1949); *cf. Campbell v. Hillsdale*, 12 *N. J. Super.* 182 (*App. Div.* 1951). Moreover, a board of adjustment, when acting in such matters, is governed by the spirit of the Zoning Act which "has been to· restrict rather than to increase nonconforming uses, and authority to vary the application of

the general regulation should be sparingly exercised." *Lumund v. Board of Adjustment of the Borough of Rutherford,* 4 *N. J.* 577, 585 (1950). "A pre-existing non-conforming use may not be enlarged or radically modified simply because the new use would be 'no more harmful' than the old to the adjacent landowners." *Lynch v. Hillsdale, supra, p.* 133.

We therefore conclude that the amendment in question was not part of a "comprehensive plan" nor designed to achieve the statutory objectives of zoning hereinabove enumerated, and resulted in the circumvention of the functions of the board of adjustment and an unwarranted discrimination solely in favor of the Fischer Casting Company and against the owners of property in the neighborhood of its foundry. Such arbitrary discrimination has been consistently struck down by our courts. *Ingannamort v. Fair Lawn,* 133 *N. J. L.* 194, 196 (*Sup. Ct.* 1945); *Appley v. Bernards Twp., supra; Linden Methodist Episcopal Church v. Linden,* 113 *N. J. L.* 188, 191 (*Sup. Ct.* 1934); *Guaranty Construction Co. v. Bloomfield, supra; Cassinari v. City of Union City, supra.*

We have not overlooked defendants' contention that the plaintiffs have no standing to maintain this action in lieu of prerogative writ because they have failed to prove they suffered any special injury as the result of the adoption and application of the amendment, apart from that suffered in common with the general public. However, we cannot agree with this contention. As already noted, one of the fundamental theories of zoning is that arbitrary and invidious discrimination is to be avoided. *Appley v. Bernards Twp., supra.* "The very scheme of the statute connotes a neighborhood interest in the enactment and enforcement of a zoning ordinance." *Conaway v. Atlantic City,* 107 *N. J. L.* 404, 405 (*Sup. Ct.* 1931). Since we have found that the amendatory ordinance is discriminatory and unreasonable with respect to the owners of property in the neighborhood of the company's expanded foundry, these owners unquestionably have an interest in the matter which is special and entirely distinct from that of the community as a whole, or that of

owners of property not so situated. Therefore the plaintiffs who are so situated have sufficient interest to maintain this action. *Menges v. Tp. of Bernards*, 4 *N. J.* 556, 559 (1950); *Lynch v. Hillsdale, supra; Appley v. Bernards Twp., supra; Gaston v. Ackerman*, 6 *N. J. Misc.* 696, 697 (*Sup. Ct.* 1928); *Cassinari v. City of Union City, supra;* 8 *McQuillin, Municipal Corporations* (3d ed.), § 25.292, *p.* 555. *Cf. Conaway v. Atlantic City, supra; Michigan-Lake Bldg. Corporation v. Hamilton*, 340 *Ill.* 284, 172 *N. E.* 710, 713 (*Ill. Sup. Ct.*, 1930).

█ Finally, the appellants argue that the trial court in this case erroneously took the position that the decision in the antecedent litigation between the Fischer Casting Company and the board of adjustment (hereinabove adverted to) precluded the governing body of the borough from exercising its legislative authority to amend its zoning ordinance. It is obvious, of course, that the court in the prior suit could not have precluded any *proper* exercise of such powers. However, the record before us reveals that the trial court in the case *sub judice* actually based its judgment upon a finding that the amendment of the ordinance here in question was the result of an illegal exercise of such legislative authority and therefore void, and with that conclusion, as already indicated, we are in complete accord.

The judgment below is accordingly affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.