[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Sheldon Yessenow, from a decision of the City of Bridgeport Planning Zoning Commission (Commission) denying Yessenow's application for a change of zone.
The matter was assigned for trial and the parties appeared with counsel and were heard on September 18, 2003. The court reserved decision. On September19, 2003, the plaintiff provided the court with a number of citations in support of his position for the court's consideration.
The plaintiff has established aggrievement by virtue of the fact that his is a contract purchaser who has an interest in the property recognizable under Section 8-8 (a), C.G.S.
The subject property is located at 1051 Huntington Turnpike and 471 Broadbridge Road in Bridgeport. The plaintiffs application sought a change of zone from an A-Residence zone to an Office/Retail Neighborhood zone.
The plaintiffs application was heard by the Commission on April 26, 1999 and was subsequently denied.
The Commission voted to deny the application for the following reasons:
 1. The granting of the petition would not promote public safety and welfare within the exiting neighborhood or for the citizens of Bridgeport.
 2. Commercial development of the subject site would result in an increase of the existing traffic congestion.
3. The proposal does not comply with the Master Plan or the Comprehensive Plan of the City of Bridgeport. CT Page 1374
As noted, the property is on the corner of Broadbrige Road and Huntington Turnpike in Bridgeport. The properties on the other three corners of that intersection contain uses other than residential. There are commercial or professional businesses on each of the other three corners.
The subject property is located in a Residence-A zone. The permitted uses in that zone are residences, accessory apartments, home offices, home businesses and community residences — with special permit.
The property has been used for residential purposes. The same one-family home has been on the property for many years. That structure has been abandoned for several years and has become a run-down eyesore used by transients.
The applicant presented a plan to have two house-like buildings on the property which, in fact, would be the site of his veterinary practice.
At the hearing a number of neighboring property owners appeared and expressed concerns about the negative consequences the change in zone would bring (RR Ex.B). Those concerns included an increase of traffic in an already highly congested area, the further encroachment of commercial uses into what is still a predominantly residential neighborhood, and most of all, the concern that once the property became zoned for OR/N uses there was no way to insure that future owners or developers would make as attractive a use of the property as the plaintiff proposed to do with it.
This concerned was heightened by the fact that the plaintiff had indicated that his proposed use would be for about 10 years (RR Ex. CC).
Those who buy property in a zoned district have the right to expect that the classification will not be changed unless a change is required for the public good. Damick v. Planning Zoning Commission,158 Conn. 78 (1969).
The only issue before the court is whether or not the Commission's decision to deny the application was arbitrary, unreasonable, illegal or an abuse of discretion. First Hartford Realty Corp. v. Planning Zoning Commission of the Town of Bloomfield, 165 Conn. 533 (1973).
A change of zone is a legislative act of the agency rather than a quasi-judicial act. Protect Hamden/North Haven v. Planning Zoning Commission, 220 Conn. 527, 542-544 (1991). CT Page 1375
The evidence and testimony permits the court to find that as to at least two of the other three properties at that intersection the commercial use now enjoyed was not the result of the granting of applications for change of zone, but rather by the allowance of variances conferred after extensive litigation and limited to the particular business use on the property. Those changes were then incorporated into the city's new zoning regulations and map in 1996.
The Commission was provided with testimony to establish that the traffic conditions then existing were rated "F", a strong negative indicator (RIR Ex.A). It was also noted that the intersection has been the site of approximately 155 motor vehicle accidents from 1995 to 1999 RIR Ex.A).
The Commission heard from its land use coordinator who stated that the plaintiffs proposal, in his opinion, was inconsistent with the Future Land Use Map and Comprehensive Plan. He recommended that the Commission deny the application. (RR Ex.X).
The court finds that the Commission took into consideration the best interest of the citizens of Bridgeport in denying the application for change of zone and that it did not act arbitrarily, unreasonably, illegally nor did it abuse its discretion in denying the plaintiffs application.
The plaintiff further claimed that the denial of his request for a change of zone amounts to an inverse condemnation of his property.
There was no evidence that the property could not be used for the currently authorized purpose — residential use. There is no proper application of the inverse condemnation theory. The highest and best use is still available to the owner of the property notwithstanding the refusal by the Commission to change the zone to permit other uses.
Having considered the evidence including the record of proceedings before the Commission, the evidence including the exhibits offered at trial, and having considered the applicable statutes and case law, the court finds that the Commission did not act in a way that was arbitrary, unreasonable, illegal, nor did it abuse its discretion.
The decision of the Commission is affirmed and the appeal of the plaintiff is dismissed.
By The Court ___________________ Joseph W. Doherty, Judge CT Page 1376
[EDITORS' NOTE: This page is blank.] CT Page 1377